IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

ADAM ARMSTRONG,                  )
     Plaintiff,                   )        Civil Action No. 5:19-cv-00040
                      )
     v.                           )        By: Elizabeth K. Dillon
                      )            United States District Judge
BRYAN HUTCHESON, DANIEL L.       )
CONLEY, BRADLEY SMITH, THOMAS    )
JAMES, and KRISTY MARIE ROADCAP, )
     Defendants.                  )

**MEMORANDUM OPINION**

Pending before the court are a motion for summary judgment (Dkt. No. 87) and a motion

in limine (Dkt. No. 92), filed by defendants Bryan Hutcheson, Daniel Conley, Bradley Smith,

and Thomas James, and plaintiff Adam Armstrong's partial motion for summary judgment

against defendant Kristy Marie Roadcap (Dkt. No. 88).  The court held a hearing on these

motions, they have been fully briefed, and they are ripe for resolution.  For the reasons stated

below, the court will grant the law enforcement defendants' motion for summary judgment,

dismiss the motion in limine as moot, and grant in part Armstrong's partial motion for summary

judgment as to Roadcap on Count V (trespass) and Count VI (conversion) only.

I.  BACKGROUND

**A.  Factual Background Relevant to Defendants' Motion for Summary Judgment**

Plaintiff Adam Armstrong and defendant Kristy Marie Roadcap are residents of

Rockingham County, Virginia.  (Declaration of Christine Williams in Opp'n to Mot. for Summ.

J. (Williams Decl. Opp'n Summ. J.) ¶¶ 2, 5(C), Ex. 1, Dkt. No. 95-1.)  Armstrong and Roadcap

were legally married during the events that gave rise to this suit, and, at that time, they had the

same last name.  (*Id.* ¶ 3, Ex. 2; Exhibit F, 911 call at 2:18–2:22, Dkt. No. 94.)  Defendant Bryan

Hutcheson is the Sheriff of Rockingham County. (Compl. ¶ 5, Dkt. No. 1; Defendants' Answer ¶ 4, Dkt. No. 17.) Defendants Daniel Conley, Bradley Smith, and Thomas James are deputy sheriffs for Rockingham County. (Compl. ¶¶ 6–8; Defendants' Answer ¶ 5.)

On June 9, 2017, Roadcap called 911 and asked for a police officer to come to her house because her husband would not let her inside to retrieve her property. (911 call at 00:09–00:16.) The 911 dispatcher inquired whether there was "any kind of paperwork in place." (*Id.* at 00:17–00:21.) Roadcap denied any paperwork and told the dispatcher, "I live here, I left last night to get ice cream and he won't let me back in the house." (*Id.* at 00:21–00:27.) Roadcap informed the dispatcher that she was outside the home, Armstrong was inside the home, and the disagreement between them was verbal, not physical. (*Id.* at 1:24–1:32.) The dispatcher asked Roadcap whether Armstrong had any weapons. (*Id.* at 1:58–2:00.) Roadcap informed her that "there are guns in the home," but Armstrong had not been using them. (*Id.* at 2:00–2:08.) Armstrong does not dispute that he had firearms in the home. (Armstrong Dep. 33:1–3, 54:6–15; 102:22–24, Dkt. No. 90-9; Ex. H, Plaintiff Video 1, Dkt. No. 94.)

The dispatcher then made an announcement for deputies to respond to Roadcap's 911 call. The dispatcher described the situation as "a domestic in progress," that was "verbal between husband and wife." (Exhibit G, Dispatcher call at 00:15–00:19, Dkt. No. 94.) The dispatcher stated, "We have the wife on the line advising she wants to get her stuff from the property. The husband is being argumentative and won't let her into the residence. She did advise that there are guns inside the household, but he hasn't been using anything." (*Id.* at 00:19–00:34.)

Deputies Conley and Smith responded to Roadcap's 911 call. Smith arrived at the residence first. (Smith Dep. 18:25–19:1, Dkt. No. 90-7.) Smith understood the situation to be a

domestic involving a husband and wife, with guns in the house but no violence. (*Id.* at 19:05–19:19.)  When Smith arrived, he went to the rear of the residence where Roadcap was sitting. (*Id.* at 20:06–20:10.)  Smith asked Roadcap for "her side of the story," and she "advised that her husband had locked her out of the home and would not allow her to get in, and she wanted to collect her belongings." (*Id.* at 21:01–21:06.)  Armstrong concedes that Roadcap's work laptop, medical bag, and other property, including her daughter's clothing, were in the house. (Armstrong Dep. 33:1–3, 54:6–15; 102:22–24; Plaintiff Video 1.)  Smith then requested that dispatch run a check on Roadcap's driver's license to see if there were any outstanding warrants or protective orders. (*Id.* at 21:13–25; Conley Dep. 53:21–54:13, Dkt. No 90-6.)  Dispatch did not report any outstanding warrants or protective orders. (Conley Dep. 54:14–17.)  The address on Roadcap's license did not match the address of Armstrong's residence. (Williams Decl. Opp'n Summ. J. ¶ 3, Ex. 2.)

Conley arrived at the residence shortly after Smith.  Conley believed that Roadcap and Armstrong were legally married but separated. (Conley Dep. 54:24 –55:13.)  Conley and James had previously responded to a call at Armstrong's residence in 2015, two years earlier, during which they provided Armstrong with trespass notices to serve on Roadcap so that she could not come back on Armstrong's property. (Conley Dep. 28; James Dep. 25, Dkt. No. 90-8.)

Roadcap told deputies Conley and Smith that she and Armstrong had separated, but they were still married, and she recently moved back into the residence. (Conley Dep. 55:1–13; Conley Answers to Int. ¶ 1, Dkt. No. 90-4.)  When deposed, Armstrong noted that they would separate and reconcile repeatedly and had gone to Mexico together one month before this incident. (Armstrong Dep. 23:9–12, 80, 11–14.)  He also admitted that he had previously testified that Roadcap spent the night on a day or two in June 2017. (*Id.* at 26:2–25, 27:1–16.)

3

Roadcap also told the deputies that "she owned a vehicle in the driveway and garage of the residence." (Conley Dep. at 55:23–56:6.) Armstrong noted that sometimes she had more than one vehicle at the residence. (Armstrong Dep. 72:10–73:2.)

At some time prior to entering the residence, Conley called Magistrate Judge Koblish to seek advice on the law "as to the rights of a spouse to enter the marital residence to retrieve her belongings," but Conley did not ask for or obtain a warrant. (Conley Answers to Int. ¶ 1; Koblish Dep. 18:10–14, 42:8–43:13, Dkt. No. 90-11.) Conley asked the magistrate whether any criminal liability would result from entry, and he was not forbidden from entering. *Id.*

Deputies Conley and Smith knocked on the back door of the house and announced their presence, and there was no response. (Conley Answers to Int. ¶ 1.) Roadcap then used a key to cut a hole in an exterior screen located on the back door, pulled back the screen, and used a key to unlock the back door.[1] (Smith Dep. 23:23–24:12.) Roadcap had retrieved the key that unlocked the back door from underneath a rock located next to the door, though it is unclear whether she retrieved the key before or after the deputies arrived at the scene. (Roadcap Dep. 71:16–18, Dkt. No. 90-10.) Armstrong admitted that he knew that Roadcap had a key. (Armstrong Dep. 78:15–22; Ex. I, Plaintiff Video 2, Dkt. No. 94.)

Deputies Conley and Smith followed Roadcap into the residence and again announced their presence. (Smith Dep. 30:11–16.) Once inside, Conley observed pictures of Roadcap on the walls of the residence. (Conley Dep. 47:17–48:4.) Roadcap took garbage bags from the kitchen and went upstairs to begin putting her belongings in the garbage bags. (*Id.*) The deputies followed Roadcap upstairs.

---

[1] The parties dispute whether this screen door could be unlocked from the outside or only from the inside. (Dkt. No. 95 ¶ 17.)

Armstrong was in his bedroom when he first heard the deputies and Roadcap.  (Williams Decl. Opp'n Summ. J. ¶ 12, Ex. 9.)  Armstrong exited his bedroom to find the deputies upstairs in his home.  (Plaintiff Video at 00:12–00:15.)  Armstrong said, "can I help you," and the deputies explained that they were helping Roadcap gather her belongings.  (*Id.* at 00:16–00:20.)  Armstrong repeatedly told the deputies "you all have no right to be in here."  (*Id.* at 00:20–00:50.)  The deputies told Armstrong that they had a right to be there because Roadcap lived in the residence and Roadcap and Armstrong were legally married.  (*Id.* at 00:50–1:10.)  Armstrong insisted that Roadcap did not live in the residence, he explained that they were separated and had filed for divorce, and he asked the deputies to check Roadcap's ID as evidence that she did not live in the residence.  (*Id.* at 00:53–1:10.)  The video demonstrates that Armstrong was argumentative.  One of the deputies responded that "she lives here, the ID is meaningless."  (*Id.* at 1:10–1:11.)  Armstrong reasserted that Roadcap did not live in the residence, and the deputies inquired why Roadcap would store all her belongings at Armstrong's residence if she did not live there.  (*Id.* at 1:11–2:24.)

Conley then directed Smith to hold Armstrong at the bottom of the stairs while Roadcap continued gathering her belongings.  (Armstrong Dep. 61:08–61:19.)  Armstrong states that Conley told him, "you need to stay there with [deputy Smith]."  (Armstrong Dep. 63:1–4.)  None of the deputies physically restrained Armstrong, but the deputies were armed and in uniform.  (*See* Plaintiff Video 1, 2.)

Deputy James arrived at the residence while plaintiff and Deputy Smith were still downstairs.  (Armstrong Dep. 63:5–8, 65:5–8.)  James stayed at the residence very briefly, spoke with Conley and Smith, and then left.  (Armstrong Dep. 66:09–66:10.)  "There was very little if

any interaction between [Armstrong] and James."  (Armstrong Dep. 66:15–18; James Dep. 22:3–14.)

After gathering her clothes and her daughter's clothes, Roadcap personally carried her belongings out of the residence.  (Roadcap Dep. 45:18–21, 52:23–25).)  The deputies escorted Roadcap but did not help her carry her belongings.  (*Id.* at 53:01–06.)  Deputy Conley testified he did not help Mrs. Armstrong carry them, and Deputy Smith had no memory of helping [Roadcap] carry them.  (Conley Dep. 47:8–10; Smith Dep. 38:13–17.)  Armstrong states that his passport and key fob went missing from his residence after this incident.  Roadcap testified that she did not take Armstrong's passport or key fob from the residence; however, she failed to respond to requests for admission asking her to admit that she did take items.  (Roadcap Dep. 54:22–25; Williams Decl. Opp'n Summ. J. ¶ 3, Ex. 2.)

Armstrong and one of the deputies had a conversation outside the residence, during which Armstrong reiterated that Roadcap did not live at his residence.  (Plaintiff Video 2 at 1:43–1:45.)  The deputy responded, "you got to look at it from our point of view, she's got a key to the house, you got two separate vehicles . . . and you are married."  (*Id.* at 1:46–1:52.)

## B. Additional Factual Background Relevant to Plaintiff's Motion for Partial Summary Judgment

Most, if not all, of the facts set forth in this section are uncontroverted because Roadcap failed to file any response to plaintiff's requests for admission.  Fed. R. Civ. P. 36(a)(3).  Roadcap's admissions, however, are not considered admissions as to any co-defendant.  Fed. R. Civ. P. 36(b).  Additionally, requests for admission cannot be used to compel the admission of conclusions of law, *Allen v. Carrington*, C/A No. 4:07-797 DCN, 2009 WL 2877557, at *6 n.3 (D.S.C. Aug. 28, 2009); thus, the court will not consider those.

At all times relevant, Armstrong was the sole owner of the residence at issue in this case, located in Penn Laird, Virginia.  (Williams Decl. Partial Summ. J. ¶¶ 2, 5(B), Ex. 1, Dkt. No. 89-1.)  Armstrong and Roadcap entered into a Premarital Agreement dated May 13, 2015.  (*Id.* ¶¶ 2, 5(A), Ex. 1.)  Plaintiff's residence is listed as separate property in which Roadcap has no rights.  (*Id.*)  There was however, according to Armstrong, no order in effect as of June 9, 2017, that would have barred Roadcap from entering the Armstrong residence.  (Armstrong Dep.; Williams Decl. Opp'n Summ. J., Exs. 2, 6.)

On January 11, 2017, after Armstrong and Roadcap had separated, Roadcap entered into a one-year lease agreement for a residence located in Rockingham, Virginia.  (*Id.* ¶¶ 2, 5(C), Ex. 1.)  Armstrong and Roadcap entered into a Separation and Property Settlement Agreement on January 20, 2017.  (*Id.* ¶¶ 2, 5(D), Ex. 1.)  A Final Decree of Divorce between Armstrong and Roadcap was entered by the Circuit Court of Rockingham County on January 8, 2019.  (*Id.* ¶¶ 2, 5(E), Ex. 1.)  The Final Decree of Divorce provides that the parties lived separate and apart continually and without cohabitation from January 20, 2017, forward.  (*Id.*)

On June 9, 2017, Roadcap was residing at her leased residence located at 2415 Isaac Lane, Rockingham, Virginia.  (*Id.* ¶¶ 2, 5(C), Ex. 1.)  The address on her driver's license was not Armstrong's residence.  (*Id.* ¶ 3, Ex. 2.)  Roadcap admits that prior to entering Armstrong's residence on June 9, 2017, she presented her Virginia driver's license to Deputy Smith.  (*Id.*)  Roadcap further admits that she was not living or residing at Armstrong's residence and that she and Armstrong were separated and had not reconciled.  (*Id.*)

Roadcap admits that prior to entering Armstrong's residence on June 9, 2017, Armstrong told her she could not enter the residence and she did not have his permission to enter.  (*Id.*)

Roadcap admits encountering Armstrong at the Florida room door of the residence and being denied access to the residence by Armstrong.  (*Id.* ¶ 6, Ex. 3.)

Despite this knowledge, Roadcap called 911 to seek police assistance in trying to enter Armstrong's residence.  (*Id.*)  Roadcap admits providing false information, including that she had a right to enter the residence.  (*Id.* ¶ 3, Ex. 2.)  Roadcap admits that Armstrong did not give her the key that she used to access the residence.  (*Id.*)  Prior to entering the residence, Armstrong admits that she cut open a screen to an outside screen door to gain access to a door that the key would fit.  (*Id.*)  Roadcap entered the residence with Deputies Conley and Smith, each of whom had their department-issued firearm and other gear.  (*Id.*)  Defendant James entered later, also with his firearm and gear.  (*Id.*)

Once Roadcap was inside the residence, Armstrong stated that Roadcap had no right to be in the residence and that she needed to leave.  (*Id.*)  Roadcap admits that Armstrong told Conley that Roadcap did not live at the residence, instructed Conley to check Roadcap's driver's license, and that Conley responded that the license is just a piece of plastic and did not mean anything.  (*Id.* ¶ 6, Ex. 3.)  Armstrong again objected to the presence of Roadcap, Smith, and Conley, and demanded that they leave.  (*Id.* ¶ 3, Ex. 2.)  Roadcap admits that she did not make a written list of items she removed from the residence.  (*Id.*)  Roadcap admits to removing Armstrong's passport and a key fob from Armstrong's SUV.  (*Id.*)  Armstrong did not see her take the items (Armstrong Dep. 101:24–103:21), and Roadcap denied taking them in her deposition testimony (Roadcap Dep. 54:20–25; 98:10–12).

**C.  Procedural Background**

On May 22, 2019, Armstrong filed suit against Hutcheson, Conley, Smith, James, and Roadcap.  (Compl.)  Armstrong makes the following claims: (1) illegal search and seizure in

violation of the Fourth Amendment brought against the deputies and Roadcap pursuant to 42 U.S.C. § 1983; (2) illegal seizure and false imprisonment in violation of the Fourth Amendment brought against the deputies and Roadcap pursuant to 42 U.S.C. § 1983; (3) common law false imprisonment against all defendants; (4) unlawful search in violation of Virginia Code § 19.2-59 brought against the sheriff and his deputies; (5) common law trespass against all defendants; (6) conversion against all defendants; (7) common law conspiracy against all defendants; and (8) gross negligence against all defendants.  (Compl.)  Apparently recognizing that there is no *respondeat superior* liability under § 1983, plaintiff named Sheriff Hutcheson only in the state law claims.

The sheriff and his deputies have filed a motion for summary judgment arguing that they are entitled to judgment as a matter of law on all counts.  (Dkt. No. 87.)  If not granted, they ask the court to exclude expert witness Michael Bong, Esq. from testifying at trial.  (Dkt. No. 91, 92.)  Defendants argue that the issues on which Bong is to testify do not require specialized knowledge, are inadmissible legal opinions, and risk confusing the jury.  (Dkt. No. 91 at 1.)  Also pending is Armstrong's partial motion for summary judgment against Roadcap.  (Dkt. No. 88.)  Roadcap, who is proceeding *pro se*, did not file a response.

At the hearing on these motions, the court noted that Roadcap had not received a Roseboro notice regarding the partial motion for summary judgment filed against her.  Notice was then provided, but Roadcap never filed a response.

## II.  DISCUSSION

### A.  Standard of Review

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A court examines

the pleadings, affidavits, and other discovery materials in determining whether there is a genuine

issue of material fact and whether summary judgment should be granted.  *Pence v. Tenneco*

*Auto. Operating Co.*, No. 5:04CV00075, 2005 WL 999972, at *2 n.2 (W.D. Va. Apr. 26, 2005),

*aff'd*, 169 F. App'x 808 (4th Cir. 2006) (citing Fed. R. Civ. P. 56(c) and *Celotex Corp. v. Catrett*,

477 U.S. 317, 322–23 (1986)).  Furthermore, while a court may limit its consideration to the

materials cited, "it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).  A

material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs*

*v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986)).  A dispute of material fact is "genuine" if sufficient evidence

favoring the non-moving party exists for the trier of fact to return a verdict for that party.

*Anderson*, 477 U.S. at 248–49.  If the evidence supporting a genuine issue of material fact "is

merely colorable or is not significantly probative," summary judgment is appropriate.  *Id*. at 249.

The moving party bears the initial burden of showing the absence of a genuine dispute of

material fact and that summary judgment is appropriate. *Celotex*, 477 U.S. at 322–23.  Once the

moving party makes this showing, however, the opposing party may not rest upon mere

allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set

forth specific facts showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(c),

56(e).  All inferences must be viewed in a light most favorable to the non-moving party, but the

nonmovant "cannot create a genuine issue of material fact through mere speculation or the

building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

Furthermore, the evidence on which the court relies must meet "the substantive evidentiary

standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d

1310, 1315–16 (4th Cir. 1993).  Finally, [A] district court must enter judgment against a party who … 'fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.'"  *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1988) (quoting *Celotex*, 477 U.S. at 322).

Here, the court has before it two motions.  As required, all inferences regarding the law enforcement defendants' motion for summary judgment will be considered in a light most favorable to plaintiff.  Likewise, all inferences regarding plaintiff's motion for partial summary judgment as to defendant Roadcap will be considered in a light most favorable to Roadcap.

## B.  Sheriff and Deputies' Motion for Summary Judgment

### 1.  Fourth Amendment Claims Against the Deputies[2] (Counts I and II)

The Fourth Amendment to the United States Constitution provides for "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  Armstrong argues that the deputies violated his Fourth Amendment rights when they: (1) entered his residence without a warrant; (2) searched and seized property in the residence; and (3) seized or falsely imprisoned Armstrong.  (Compl. 12–16.)  The deputies respond that they did not violate Armstrong's Fourth Amendment rights, and even if they did, they are entitled to qualified immunity.

#### a.  *Warrantless Entry and Search*

Generally, warrantless entry into a person's home is per se unreasonable.  *Georgia v. Randolph*, 547 U.S. 103, 109 (2006) (citing *Payton v. New York*, 445 U.S. 573, 586 (1980); *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55 (1971)).  However, the Supreme Court has

---

[2] Armstrong brings these Fourth Amendment claims against the deputies and Roadcap, not Sheriff Hutcheson.  (Compl. at 12, 15.)  Because this motion for summary judgment is brought by the deputies, the court will not address the claims against Roadcap.

carved out a narrow exception that "recognizes the validity of searches with the voluntary consent of an individual possessing authority." *Id.* (citing *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990)).  The individual possessing authority to consent to the search may be the householder, "a fellow occupant who shares common authority over property," or "a co-occupant whom the police reasonably, but erroneously, believe to possess shared authority as an occupant." *Id.* (citing *Rodriguez*, 497 U.S. at 186; *United States v. Matlock*, 415 U.S. 164, 170 (1974); *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973)).  *See also Hays v. Bolton*, 488 F. App'x 971, 976–77 (6th Cir. 2021) (apparent authority doctrine applies when person with apparent authority is outside the residence after being removed and locked out of the same).

In determining whether an individual has authority to consent to a search, the Supreme Court has concluded "it would be unjustifiably impractical to require the police to take affirmative steps to confirm the actual authority of a consenting individual whose authority was apparent." *Randolph*, 547 U.S. at 122.  "Whether apparent authority exists is an objective, totality-of-the-circumstances inquiry into whether the facts available to the officers at the time they commenced the search would lead a reasonable officer to believe the third party had authority to consent to the search." *United States v. Andrus*, 483 F.3d 711, 716–17 (10th Cir. 2007) (citing *Rodriguez*, 497 U.S. at 188; *United States v. Kimoana*, 383 F.3d 1215, 1222 (10th Cir. 2004)).  Ultimately, "the question to be asked is whether the facts available to a government agent at the moment of a search would 'warrant a man of reasonable caution in the belief that the consenting party had authority over the premises.'" *United States v. Potter*, 71 F. Supp. 2d 543, 550 (E.D. Va. 1999) (*Rodriguez*, 497 U.S. at 188).

"In practice, the 'apparent authority' doctrine does not permit law enforcement officers to accept without question every invitation to conduct a search." *Potter*, 71 F. Supp. 2d at 550.

"Indeed, even when an invitation to search is accompanied by an explicit assertion that a person has authority over a particular area, the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry." *Id.*; *see also Kimoana*, 383 F.3d at 1222 ("[W]here an officer is presented with ambiguous facts related to authority, he or she has a duty to investigate further before relying on the consent.").

Here, the totality of the circumstances known to deputies Conley and Smith[3] at the time they entered the residence support a reasonable belief by the deputies that Roadcap had authority to allow the deputies to enter the residence. While Armstrong makes much of the fact that Roadcap lacked actual authority to consent and that she provided false information to 911 and to the deputies, there is no evidence that the deputies knew the information to be false and apparent authority is sufficient.

Roadcap reported to 911 that she needed help retrieving her belongings from her residence and provided the address. She stated that she lived at the residence and that her husband would not let her inside and that there was no paperwork. She also advised that there were firearms inside the house, but that her husband was not using them. Dispatch advised the officers that there was a domestic in progress and that the husband would not let the wife into the house. They were also advised of the firearm information. The dispatcher also confirmed to Conley that the parties had the same last name.

Upon arrival, the deputies spoke with Roadcap who informed them that she was married to Armstrong, but separated, and that she had moved back in and lived in the residence. Given

---

[3] Deputy James was not at the residence when Conley and Smith assessed Roadcap's apparent authority to consent to entry. Moreover, James was only at the residence momentarily during the entire encounter. Although James did enter the residence to speak with Conley and Smith, James was not part of the initial warrantless entry, he was not involved in any alleged search of the home, and he was not involved in the seizure of Armstrong. For these reasons, the court will grant summary judgment in favor of Deputy James on the Fourth Amendment claims.

13

this statement, it is not surprising that her driver's license had a different address.  The deputies

reasonably relied on this representation, which was further supported by the fact that Roadcap

shared Armstrong's last name.  Additionally, Conley believed them to be married because he had

previously responded to matters between them.  Although "Officers Conley and James had

previously responded to a call at the residence where they were providing Armstrong with

trespass notices to serve on Roadcap so that she could not come back on Armstrong's property,"

this encounter occurred approximately two years prior to the events at issue, and Roadcap stated

that they had reconciled.  To further check on the situation, the deputies reviewed Roadcap's

driver's license and had dispatch run it for warrants and protective orders.  Dispatch confirmed

that she lived in Rockingham County and did not find any warrants or orders.  Additionally,

Roadcap told Conley and Smith that she that she had two vehicles at the residence.  She also

produced a key that unlocked an exterior door to the residence.  These facts support a reasonable

belief by the officers that Roadcap had authority to consent to their entry into the residence.

It also is undisputed that Conley checked with a magistrate to determine whether any

criminal liability would result from entry and was not forbidden from entering, despite plaintiff's

allegation that the magistrate forbade entry.  Before entering, the deputies knocked and received

no response.

While Roadcap had to cut a screen door to access the back door to the residence with the

key, and Smith testified that he saw Roadcap cut the screen door (Dkt. No. 95 at 12; Dkt. No. 90-

7 at 7–8), this fact, standing alone, does not negate Roadcap's apparent authority to consent to

entry of the residence.  In the context of the situation described by Roadcap, in which Roadcap

claimed that Armstrong locked her out of the residence, the deputies reasonably believed that

Roadcap had authority to consent to entry of the residence.  Considering all the facts available to

14

the officers at the time they entered the residence, Roadcap had apparent authority, as a matter of law, to authorize entry by the deputies.[4]  Therefore, the court will grant summary judgment in favor of the deputies on the Fourth Amendment warrantless search and entry claim.

### b.  Seizure of Property

"A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interest in that property."  *United States v. Jacobson*, 466 U.S. 109, 113 (1984).  When an individual does not have a possessory interest in property, there can be no meaningful interference.  *See, e.g., United States v. Hicks*, 438 F. App'x 216, 219 (4th Cir. 2011) (defendant did not have property right in child pornography images and therefore, there was no interference with a property interest).

Here, there is no evidence that the deputies touched any of Armstrong's personal property or removed any of Armstrong's personal property from his home.  (Dkt. No. 90 at 16.) Armstrong states that his key fob and passport were missing after the deputies entered his residence, but he offers no evidence to suggest that the deputies took these items.  (*Id.*)  In fact, Armstrong asserts that Roadcap has admitted that she took the key fob and the passport from the residence, not the deputies.  (Dkt. No. 95 ¶¶ 33, 34.)  Therefore, no reasonable jury could find that the deputies seized Armstrong's property.  The court will grant summary judgment in favor of the deputies on the Fourth Amendment property seizure claim.

### c.  Seizure and False Imprisonment

---

[4] Armstrong also argues that he objected to the deputies' entry into the home once he became aware of their presence.  Where there are co-tenants present at the threshold of a home and one tenant objects to a warrantless entry while the other tenant consents, "the co-tenant's permission does not suffice for a reasonable search."  *Randolph*, 547 U.S. at 121.  However, it is well established that a "potential object[ing co-tenant], nearby but not invited to take part in the threshold colloquy, loses out."  *Id.*  Here, Armstrong "lost out" because he did not object to the deputies' entering the house when they were at the threshold and when Roadcap provided her consent.  Armstrong's later objections to the deputies' entry and presence in the residence do not negate Roadcap's prior consent.

"A seizure warranting Fourth Amendment protection occurs when in view of the totality of the circumstances, a reasonable person would not feel free to leave or otherwise to terminate an encounter with police." *United States v. Watson*, 703 F.3d 684, 689 (4th Cir. 2013) (citing *United States v. Lattimore,* 87 F.3d 647, 653 (4th Cir. 1996) (citing *Florida v. Bostick*, 501 U.S. 429, 438 (1991))).  "As a general rule, a seizure requires either the use of physical force or, absent the use of such force, a submission to an officer's assertion of authority." *Id.* (citing *California v. Hodari D.,* 499 U.S. 621, 626 (1991)).

"In analyzing the reasonableness of a seizure that is not supported by probable cause, courts are required to evaluate 'the law enforcement interest and the nature of the articulable facts supporting the detention.'" *United States v. Watson*, 703 F.3d 684, 689–90 (4th Cir. 2013) (quoting *Michigan v. Summers*, 452 U.S. 692, 702 (1981)).  "This analysis entails a balancing test because, under the Fourth Amendment, 'reasonableness depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'" *Id.* (quoting *United States v. Stanfield,* 109 F.3d 976, 979 (4th Cir. 1997) (quoting *Pennsylvania v. Mimms,* 434 U.S. 106, 109 (1977)).

In *Trull v. Smolka*, officers responded to a domestic situation, in which there was no violence, but officers believed there was a gun in the home.  411 F. App'x 651, 655–56 (4th Cir. 2011).  The officers seized the husband by requiring him to leave one room and remain in another room while the officers continued the investigation.  *Id.* at 659.  The court determined that this warrantless seizure was reasonable because the officers were responding to a domestic situation, they believed there was a gun in the home, and the "brief seizure amounted to little more than initial questioning of the subject of a 911 call."  *Id.*

As in *Trull*, the brief seizure of Armstrong was reasonable.  Armstrong admits that the deputies did not touch him or handcuff him, but rather required that he remain at the bottom of the stairs in his home.  (Dkt. No. 90 at 18.)  Moreover, the dispatcher had described the situation to the deputies as a "domestic in progress . . . between husband and wife" and reported that there were firearms in the home.  (Dkt. No.  90 at 2.)  The parties dispute whether Armstrong was "argumentative," but this fact is not determinative.  Even if Armstrong was cooperative, it was reasonable for the deputies to briefly detain Armstrong at the bottom of the stairs to prevent the domestic situation from escalating.  For these reasons, the court will grant the deputies motion for summary judgment as to Count II.[5]

### 2.  Common Law False Imprisonment (Count III)

"False imprisonment is the restraint of one's liberty without any sufficient legal excuse." *Lewis v. Kei*, 708 S.E.2d 884, 890 (Va. 2011) (citing *Montgomery Ward & Co. v. Wickline,* 50 S.E.2d 387, 388 (Va. 1948)).  "It is not essential that a citizen be confined in jail or placed in the custody of an officer."  *Zayre of Va., Inc. v. Gowdy*, 147 S.E.2d 710, 713 (Va. 1966).  "It is enough that the person be placed in reasonable apprehension that unless he willingly submits, force will be used."  *Samuel v. Rose's Stores, Inc.*, 907 F. Supp. 159, 164 (E.D. Va. 1995).  "If the plaintiff's arrest was lawful, the plaintiff cannot prevail on a claim of false imprisonment." *Kei*, 708 S.E.2d at 890–91.

Here, the deputies' brief detention of Armstrong was lawful.  As described above, the deputies did not physically restrain Armstrong but, rather, required him to remain at the bottom of the stairs in his residence given that there were firearms in the home, a domestic situation was

---

[5] Because the court will grant summary judgment in favor of the deputies on the Fourth Amendment claims the court need not reach the question of qualified immunity.

in progress, and he was argumentative.  For these reasons, the court will grant summary judgment in favor of the deputies and Sheriff Hutcheson on Count III.

### 3.  Unlawful Search – Virginia Code § 19.2-59 (Count IV)

Virginia Code § 19.2-59 "affords in substance only the same protection as that afforded by the Fourth Amendment."  *Carter v. Commonwealth*, 163 S.E.2d 589, 592 (Va. 1968) (citing *One 1963 Chevrolet Pickup Truck v. Commonwealth*, 158 S.E.2d 755, 757 (Va. 1968)).

Here, there is no evidence that the deputies searched Armstrong's property.  Instead, the deputies "allow[ed] Roadcap to [] search the home and seize property."  (Pl.'s Mem. Opp'n to Summ. J. 20, Dkt. No. 95.)  Armstrong alleges that the deputies assisted Roadcap in her search of the residence by detaining Armstrong at the bottom of the stairs.  (*Id.*)  However, the purpose of this detention was to prevent the domestic situation from escalating.  The deputies report that they "did not search the residence or remove any items," but rather "remained with [Roadcap] while she retrieved her items to keep the peace and ensure that no violence or breach of the peace occurred."  (Ex. D, Conley's Answers to Interrog. 3, Dkt. No. 90-4.)  A reasonable jury could not conclude that the deputies searched Armstrong's residence.  Therefore, the court will grant summary judgment in favor of the deputies and Sheriff Hutcheson on Count IV.

### 4. Common Law Trespass (Count V)

"[A] trespass is an unauthorized entry onto property which results in interference with the property owner's possessory interest therein."  *Cooper v. Horn*, 448 S.E.2d 403, 406 (Va. 1994) (quoting 5 Richard R. Powell, *The Law of Real Property* ¶ 707 (Patrick J. Rohan ed., 1994)).  Where the entry onto the property is authorized, there is no trespass.  Because Roadcap had apparent authority to authorize the deputies to enter the residence, there can be no trespass.  The court will enter summary judgment in favor of the deputies and Sheriff Hutcheson on Count V.

### 5.  Conversion (Count VI)

"A claim for conversion requires proof of a 'wrongful exercise or assumption of authority . . . over another's goods, depriving him of their possession." *Condo. Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc.*, 709 S.E.2d 163, 171 (Va. 2011) (citing *Universal C.I.T. Credit Corp. v. Kaplan*, 92 S.E.2d 359, 365 (Va. 1956)).  "Any distinct act of dominion wrongfully exerted over the property of another, and in denial of his rights, or inconsistent therewith, may be treated as a conversion." *Id.* (quoting *Kaplan*, 92 S.E.2d at 365).

Here, as noted above, there is no evidence that the deputies touched or removed any of Armstrong's property.  That Roadcap may have removed property from Armstrong's residence does not implicate the deputies.  Therefore, there can be no conversion of property by the deputies.  The court will grant the motion for summary judgment as to the deputies and Sheriff Hutcheson regarding Count VI.

### 6.  Common Law Conspiracy (Count VII)

"In Virginia, '[a] common law conspiracy consists of two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means.'" *Vollette v. Watson*, 937 F. Supp. 2d 706, 727 (E.D. Va. 2013) (quoting *T.G. Slater & Son, Inc. v. Donald P. and Patricia A. Brennan LLC*, 385 F.3d 836, 845 (4th Cir. 2004) (quoting *Commercial Bus. Sys., Inc. v. BellSouth Servs., Inc.*, 453 S.E.2d 261, 267 (Va. 1995))).  "However, the 'intracorporate immunity doctrine,' which has been adopted by the Virginia Supreme Court and the Fourth Circuit, deems multiple defendants a single entity for the purpose of analyzing a civil conspiracy claim if such defendants are employees or agents of the same entity and are acting within the scope of their employment/agency." *Id.* (citing *Fox v. Deese*, 362 S.E.2d 699, 708 (Va. 1987); *Greenville*

*Publishing Co., Inc. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974)).  Agreement among the parties is an essential element of conspiracy.  *Kayes v. Keyser*, No. CL06-313, 2007 WL 6007198, at *3 (Va. Cir. Mar. 8, 2007).  For a successful conspiracy claim, "a plaintiff 'must at least plead the requisite concert of action and unity of purpose in more than 'mere conclusory language.'"  *Id.* (quoting *Bay Tobacco, LLC v. Bell Quality Tobacco Prod.*, *LLC*, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003)).  Moreover, "[t]he object of a civil conspiracy claim is to spread liability to persons other than the primary tortfeasor."  *Gelber v. Glock*, 800 S.E.2d 800, 821 (Va. 2017). Consequently, "a common law claim of civil conspiracy generally requires proof that the underlying tort was committed."  *Id.* (quoting *Almy v. Grisham*, 639 S.E.2d 182, 188 (Va. 2007)).

Here, the sheriff and his deputies are considered one entity under the intercorporate immunity doctrine.  As one entity, the sheriff and his deputies could not have committed a conspiracy among themselves.  Furthermore, there is no evidence in the record of an agreement between the law enforcement defendants and Roadcap to commit any tort against or violate the rights of Armstrong.  In addition, the sheriff and his deputies did not have a conspiracy with Roadcap because, as court concluded above, there is no evidence that an underlying tort was committed.  Therefore, the court will grant summary judgment in favor of the sheriff and his deputies on Count VII.

### 7.  Gross Negligence (Count VIII)

"The elements of an action in negligence are a legal duty on the part of the defendant, breach of that duty, and a showing that such breach was the proximate cause of injury, resulting in damage to the plaintiff."  *Blue Ridge Serv. Corp. of Va. v. Saxon Shoes, Inc.*, 624 S.E.2d 55, 62 (Va. 2006) (citing *Trimyer v. Norfolk Tallow Co.,* 66 S.E.2d 441, 443 (Va. 1951)).  Gross

negligence is "the utter disregard of prudence amounting to complete neglect of the safety of another." *Volpe v. City of Lexington*, 708 S.E.2d 824, 828 (Va. 2011) (quoting *Chapman v. City of Va. Beach*, 475 S.E.2d 798, 800 (Va. 1996)).

In his complaint and briefing, Armstrong ignores the requirement of an allegation and proof of a legal duty.  Even if there were a sufficient showing of gross negligence, which there is not, gross negligence without a legal duty does not state a claim.  The constitution is not a font of tort law, and Armstrong is not contending that the intentional tort claims he brings were committed with gross negligence.  He simply cannot prevail on this claim without a sufficient showing of a legal duty.

Even if a legal duty had been sufficiently alleged and shown, gross negligence is not present here.  "It is a heedless and palpable violation of legal duty respecting the rights of others which amounts to the absence of slight diligence, or the want of even scant care." *Volpe*, 708 S.E.2d at 828.  "Deliberate conduct is important evidence on the question of gross negligence." *Id.* at 829.  Gross negligence "requires a degree of negligence that would shock fair-minded persons, although demonstrating something less than willful recklessness." *Cowan v. Hospice Support Care, Inc.*, 603 S.E.2d 916, 918 (Va. 2004) (citing *Koffman v. Garnett*, 574 S.E.2d 258, 260 (Va. 2003); *Griffin v. Shively*, 315 S.E.2d 210, 213 (Va. 1984); *Ferguson v. Ferguson*, 181 S.E.2d 648, 653 (Va. 1971)).

Here, there is no evidence that the sheriff or his deputies acted with gross negligence.  As discussed above, the deputies acted reasonably when concluding that Roadcap had apparent authority to grant entry to the residence.  Moreover, the deputies acted reasonably in requiring Armstrong to stay at the bottom of the stairs while Roadcap collected her belongings so as to avoid escalation of the domestic situation.  For these reasons and the reasons discussed above a

reasonable jury could not conclude that the deputies had a legal duty or acted with gross negligence.  Accordingly, the court will grant summary judgment in favor of the sheriff and his deputies on Count VIII.[6]

## C.  Plaintiff's Partial Motion for Summary Judgment Against Roadcap

### 1.  Fourth Amendment Search (Counts I and II)

"To state a claim for relief in an action brought under § 1983, respondents must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999).  "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'"  *Id.* (quoting *Blum v. Yaretsky,* 457 U.S. 991, 1002 (1982) (quoting *Shelley v. Kraemer,* 334 U.S. 1, 13 (1948))).  "Although the conduct of private parties lies beyond the Constitution's scope in most instances, governmental authority may dominate an activity to such an extent that its participants must be deemed to act with the authority of the government" or under the color of state law.  *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 620 (1991).

"In order to show state action by a private entity [] it must be demonstrated that the private party charged with the deprivation could be described in all fairness as a state actor."  *Andrews v. Fed. Home Loan Bank of Atlanta*, 998 F.2d 214, 217 (4th Cir. 1993).  "A private party can be deemed a state actor in four contexts: (1) when the state has coerced the private actor to commit an act that would be unconstitutional if done by the state; (2) when the state has sought to evade a clear constitutional duty through delegation to a private actor; (3) when the

---

[6] Since the court will grant summary judgment in favor of the sheriff and his deputies on all counts, the deputies' motion in limine (Dkt. No. 91) regarding expert witness Michael Bong, Esq. is moot.

state has delegated a traditionally and exclusively public function to a private actor; or (4) when the state has committed an unconstitutional act in the course of enforcing a right of a private citizen." *Id.  See also Hughes v. Meyer*, 880 F.2d 967, 972 (7th Cir. 1989) (calling for assistance from law enforcement, even without grounds, is insufficient for state action unless there is a conspiracy).  Here, the only possible avenue for state action is the commission of an unconstitutional act while enforcing a right of a private citizen.

While Roadcap has admitted, by failing to respond to requests for admission, that she was acting under color of state law, that is a legal conclusion, so the admission is of no effect.  As the court has already determined, in a light most favorable to Armstrong, which is not the standard for this motion, there was no unconstitutional act committed when the deputies entered the residence and separated Armstrong from Roadcap while Roadcap gathered her belongings. Moreover, as discussed above, the deputies did not seize any of Armstrong's property or falsely imprison Armstrong.  Therefore, Roadcap was not acting under color of state law and summary judgment is not appropriate as to Armstrong's Fourth Amendment claims against her.  Therefore, the court will deny Armstrong's request for summary judgment against Roadcap as to Counts I and II.

### 2.  False Imprisonment (Count III)

"To prevail in an action for false imprisonment, a plaintiff must prove that [his] liberty was restrained, either by words or acts that she would fear to disregard, and that there was no sufficient legal excuse to justify the restraint."  *Dill v. Kroger Ltd. P'ship I*, 860 S.E.2d 372, 380 (Va. 2021).  "False imprisonment is restraint of one's liberty without any sufficient cause therefor; it is not essential that a person is confined in jail or in the custody of an officer."  *Id.* (quoting *Zayre*, 147 S.E.2d at 713).  "If a person is under a reasonable apprehension that force

will be used unless he willingly submits, and he does submit to the extent that he is denied

freedom of action, this, in legal contemplation, constitutes false imprisonment." *Id.*

Here, there is no evidence, even following a review of requests for admission, to suggest

that Roadcap restrained Armstrong by words or physical action. Rather, Roadcap gathered her

belongings while the deputies required Armstrong to stay at the bottom of the staircase. As

discussed above, the deputies' actions do not constitute false imprisonment. For these reasons,

the court will deny Armstrong's partial motion for summary judgment as to Count III.

### 3. Common Law Trespass on Armstrong's Real Property (Count V)

As stated above, "a trespass is an unauthorized entry onto property which results in

interference with the property owner's possessory interest therein." *Cooper*, 448 S.E.2d at 406.

Thus, to commit a trespass, the trespasser must not be the property owner or have a possessory

interest in the property.

Virginia Code Annotated § 55.1-200 provides that the marriage itself provides no right to

property of the other person as follows:

> Married persons shall have the right to acquire, hold, use, control, and dispose of
> property as if they were unmarried. Such power of use, control, and disposition
> shall apply to all property of a married person. The marital rights of persons
> married to each other shall not entitle either spouse to the possession or use, or to
> the rents, issues, and profits, of such real estate of the other spouse during the
> coverture, nor shall the property of either spouse be subject to the debts or
> liabilities of the other spouse.

Additionally, Armstrong and Roadcap have a premarital agreement which states that the

residence at issue is the separate property of Armstrong, and Roadcap "shall have no right, title,

interest, or claim . . . to any of [Armstrong's] separate property assets." (Dkt. No. 89-1 at 18,

29.) Armstrong and Roadcap also have a separation agreement that was executed on January 20,

2017, before the events at issue. The separation agreement provides that "[t]he Parties are

entitled to their own separate property and personal effects as set out in [the] premarital agreement." (Dkt. No. 89-1 at 66.)  Further, the separation "agreement shall not be invalidated or otherwise affected by a reconciliation of the Parties or their resumption of marital relations, unless there is a signed and notarized document stating they are cancelling or altering this agreement." (*Id.* at 67.)

The Supreme Court of Virginia has construed what is now Virginia Code § 55.1-200 to "uphold a wife's right to evict her estranged husband, as though he were a trespasser, from an apartment owned by her and formerly used as the marital dwelling." *Knox v. Commonwealth*, 304 S.E.2d 4, 5–6 (Va. 1983).  "Specifically, [the court] held that, since the adoption of the [statute], a husband's 'right to curtesy and his marital rights give him no more power or authority over his wife's property than if he were a total stranger.'" *Id.* at 6 (quoting *Edmonds v. Edmonds*, 124 S.E. 415, 417 (Va. 1924)).

Here, Roadcap had no ownership or possessory interest in the residence pursuant to the parties' pre-marital and separation agreements.  Nevertheless, Roadcap entered and led the deputies into the residence without Armstrong's permission.  Once in the residence, Armstrong requested that Roadcap leave the residence.  However, she remained in the residence and gathered her personal belongings, thereby interfering with Armstrong's possessory interest in the property.  Therefore, construing the facts in the light most favorable to Roadcap and given Roadcap's admissions, Roadcap trespassed on Armstrong's property as a matter of law.  Accordingly, the court will grant Armstrong's partial motion for summary judgment as to Count V.

**4.  Conversion (Count VI)**

As stated above, "a claim for conversion requires proof of a 'wrongful exercise or assumption of authority . . . over another's goods, depriving him of their possession." *Condo. Servs., Inc.*, 709 S.E.2d at 171.  "Any distinct act of dominion wrongfully exerted over the property of another, and in denial of his rights, or inconsistent therewith, may be treated as a conversion." *Id.*

Here, Armstrong states that his passport and key fob went missing from his residence after Roadcap and the deputies entered his home.  While Roadcap testified in her deposition that she did not take Armstrong's passport or key fob from the residence, she admitted, by failing to respond to requests for admission, that she took the passport and key fob.  (Roadcap Dep. 54:22–25; Dkt. No. 95 ¶ 33, 34 (citing Dkt. No. 95-1).)  Because the admissions contradict her deposition testimony, any dispute of material fact in this regard is not sufficient to preclude summary judgment.  *Burwick v. Pilkerton*, 700 F. App'x 214, 216–17 (4th Cir. 2017).  Thus, Armstrong is entitled to summary judgment against Roadcap as to Count VI for conversion of the passport and key fob.

### 5.  Gross Negligence (Count VIII)

As discussed above, gross negligence without a legal duty and in the abstract is not sufficient to assert a claim.  Again, Armstrong fails to plead or argue in his brief the existence of a legal duty.  That failure dooms this claim, and the court will deny Armstrong's partial motion for summary judgment as to Count VIII.

### III.  CONCLUSION

For the reasons stated above, the court will grant the sheriff and deputies' motion for summary judgment on all counts (Dkt. No. 87), dismiss the sheriff and deputies' motion in limine (Dkt. No. 91) as moot, and grant Armstrong's partial motion for summary judgment

against Roadcap (Dkt. No. 88) only as to Count V (trespass) and Count VI (conversion) and deny

Armstrong's motion as to all other counts.

       An appropriate order will be entered.

       Entered: September 30, 2021.


                */s/ Elizabeth K. Dillon*
                Elizabeth K. Dillon
                United States District Judge